

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-120-CV

GORDON & DONER, P.A.                                    APPELLANT

V.

JEFFREY JOROS                                          APPELLEE

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I.    Introduction

Is a Florida law firm that referred a Florida resident's case to a Texas lawyer for filing in New York subject to personal jurisdiction in Texas? Because we hold that the Florida firm did not have sufficient minimum contacts with Texas to support the exercise of specific jurisdiction over it by a Texas court, we answer the question "no." We reverse the trial court's order denying the

Florida law firm's special appearance and render judgment dismissing Appellee's claims against the Florida law firm for lack of personal jurisdiction.

## II.    Background

Appellee Jeffrey Joros ("Joros"), a Florida resident, sued Appellant Gordon & Doner, P.A. ("Gordon"), a Florida law firm, as well as Bailey & Galyen f/d/b/a Bailey, Galyen & Gold ("Bailey"), a Texas law firm; Phillip Galyen, P.C., a Texas law firm; and Robert Schwartz, an attorney and Texas resident, for professional negligence, DTPA violations, breach of fiduciary duty, and fraud. Gordon filed a special appearance with its original answer.

### A.    Joros's Allegations

Joros's first amended original petition alleged that he retained Gordon to represent him in claims against Eli Lilly arising out of injuries involving the drug Zyprexa. Suit was to be filed in multidistrict litigation pending in the Eastern District of New York.[1] Thereafter, he alleged, Gordon referred Joros's case to Bailey in Texas to file his claims in the litigation pending in New York. Allegedly, Gordon entered into a written contract with Bailey to jointly represent

---

[1] The United States Judicial Panel on Multidistrict Litigation established an MDL proceeding for Zyprexa litigation in 2004 and ordered Zyprexa-related claims transferred to the United States District Court for the Eastern District of New York for pretrial proceedings. *See In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1382 (J.P.M.L. 2004).

Joros. According to Joros, Bailey was to act as lead counsel for Joros, and a substantial portion of the legal services concerning Joros's case was to be performed by Bailey in Texas. Gordon would remain jointly responsible for Joros's case.

Joros pleaded that the "[d]efendants" told him that they would soon file suit in his case, that later they told him that he had been "included in the first round of settlements in the Zyprexa litigation," and that still later they told him that he was part of a second round of settlements concerning the Zyprexa litigation. However, Joros asserted, he eventually discovered that his claim was never filed.[2]

## B. Gordon's Special Appearance

Gordon filed a special appearance alleging that Gordon was a business entity formed under Florida law and has never done business in Texas. Gordon also alleged that Gordon:

---

[2] Further, Joros alleged on information and belief that the defendants solicited other Zyprexa cases with the intent to refer these cases to other firms and that the defendants never intended to fully litigate any of these cases but intended to file them and negotiate an aggregate settlement. Joros alleged that a conflict of interest emerged due to the numerous Zyprexa clients the defendants had secured and that the defendants failed to disclose the conflict to Joros.

- is not a resident of Texas and is not required to maintain, nor does it maintain, a registered agent for service in Texas;

- does not engage in, and has never engaged in, any business in Texas;

- has not done business in Texas within the meaning of Texas Civil Practices and Remedies Code section 17.042;

- has not committed any torts, in whole or in part, in Texas;

- has no employees, servants, or agents in Texas;

- has not maintained a place of business in Texas and has never maintained offices or any other type of facility in Texas;

- does not own any real or personal property in Texas;

- does not maintain any bank accounts, telephone numbers, or post office boxes in Texas; and

- does not pay any taxes to any local or state taxing authorities within Texas.

Robert E. Gordon, a partner in the Gordon law firm, attached an affidavit stating that he resides in Florida and is licensed to practice law in Florida, that he is not licensed to practice law in Texas, that none of the other lawyers in the Gordon law firm are licensed in Texas, and that he does not own property in Texas, does not maintain bank accounts in Texas, and has never represented Texas residents in litigation in Texas. Further, he averred that Gordon has never advertised in Texas, has never represented clients in litigation or

4

transactions in Texas, and that the attorney-client relationship between Gordon and Joros was initiated and subsequently conducted in Florida.

In its brief in support of its special appearance, Gordon argued that it was a Florida law firm, that Joros was a Florida resident, and that all contacts between Joros and Gordon that give rise to Joros's claims occurred in Florida. Gordon stated that its sole connection with the state of Texas pertaining to Joros's claim was that it entered into a joint-representation agreement with Bailey on Joros's behalf relating to the Zyprexa litigation.

### C.   Joros's Response to Gordon's Special Appearance

In his response to Gordon's special appearance, Joros attached copies of the contract for legal services signed by Joros and Gordon, a "statement of client's rights for contingency fees" signed by Joros and Gordon, and Joros's written consent for Gordon to associate Bailey in his claims.

### D.   Stipulations of the Parties

Also attached were stipulations between Gordon and Joros that the contract, the fee agreement, and the consent to associate were true and correct copies. The parties' stipulations also provided that Bailey had been associated as "lead counsel" in connection with Joros's claim, that Joros's claim was not to be filed in the state of Texas but in the multi-district litigation pending outside of Texas, that much of the "legal work provided by [Bailey] was going

5

to be performed in Texas," and that Gordon had referred several other claims involving the use of Zyprexa to Bailey.

### E.     The Ruling

After a hearing at which no additional evidence was presented, the trial court denied Gordon's special appearance, from which ruling Gordon has brought this interlocutory appeal.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008) (allowing interlocutory appeal from denial of special appearance).

## III.     Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo.  *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  In reviewing a trial court's ruling on a special appearance, we examine all of the evidence in the record to determine if the defendant negated all possible grounds for personal jurisdiction. *Bergenholtz v. Cannata*, 200 S.W.3d 287, 292 (Tex. App.—Dallas 2006, no pet.).  The trial court must frequently resolve underlying fact questions before deciding the jurisdictional issue.  *BMC Software Belgium*, 83 S.W.3d at 794. If the trial court does not issue findings of fact, we imply all such findings necessary to support the judgment that are supported by the evidence.  *See id.*

at 795.  When a reporter's record is included in the appellate record, the trial court's findings — either express or implied — are not conclusive and are subject to challenge for legal and factual sufficiency.  *See id.*  However, the facts in this appeal are undisputed.  Although the trial court held a hearing on Gordon's special appearance and considered the pleadings, evidence, and argument of counsel, there is no reporter's record.  Therefore, we will presume that the special appearance hearing was nonevidentiary and that the trial court considered only the evidence filed with the clerk.  *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005).

## IV.   Personal Jurisdiction

### A.    Applicable Law

Texas courts may assert personal jurisdiction over a nonresident if jurisdiction is authorized by the Texas long-arm statute and is consistent with federal and state constitutional due-process guarantees.  *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (Vernon 2008).  The long-arm statute allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow."  *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.

7

1991)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (listing acts constituting "doing business" within state for purposes of long-arm statute). Thus, a Texas court may only exercise personal jurisdiction over a nonresident if doing so complies with federal due process requirements. *See Moki Mac*, 221 S.W.3d at 575. Those requirements are satisfied if (1) the nonresident defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

### 1. Nature of Contacts with Texas

The contacts relevant to a jurisdictional analysis are those by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)); *Michiana*, 168 S.W.3d at 784. The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana,* 168 S.W.3d at 784 (citing *Hanson,* 357 U.S. at 253, 78 S. Ct. at 1240). It is essential in each case that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities

8

within the forum state, thus invoking the benefits and protections of its laws. *Id.*

There are at least three aspects to the "purposeful availment" inquiry: first, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; second, the contacts with the forum must be "purposeful" rather than "random, isolated, or fortuitous"; and third, the "defendant must seek some benefit, advantage[,] or profit by 'availing' itself of the jurisdiction." *Moki Mac,* 221 S.W.3d at 575; *Michiana*, 168 S.W.3d at 785. What is important is the quality and nature of the defendant's contacts with the forum state, rather than their number. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806.

### 2. Specific and General Jurisdiction

A nonresident defendant's contacts with the forum state meet the federal due process minimum contacts standard if the contacts establish either general or specific jurisdiction. *BMC Software Belgium,* 83 S.W.3d at 795–96. Joros relies only upon specific jurisdiction in this case; he concedes general jurisdiction is lacking. When specific jurisdiction is alleged, the focus is on the relationship between "the defendant, the forum[,] and the litigation." *Moki Mac*, 227 S.W.3d at 575 (quoting *Guardian Royal*, 815 S.W.2d at 226).

The necessary relationship between the defendant, the forum and the litigation requires that a court exercise "specific" jurisdiction only in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8 (1984); *see also CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). As to the "relatedness" element, there must be "a substantial connection between [the nonresident's contacts with the forum] and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585.

**B.    Specific Jurisdiction Analysis**

Gordon contends that minimum contacts for specific jurisdiction in Texas are lacking because, under the undisputed facts, the claims asserted by Joros do not arise out of or relate to any contacts by Gordon with Texas but arise solely out of an agreement entered into in Florida between Gordon and Joros, both Florida residents, for representation in the Zyprexa claims to be filed in New York. Joros responds that Gordon referred the case to Bailey, the Texas law firm, pursuant to an agreement between Gordon and Bailey in which it was understood that a substantial portion of the legal services would be performed in Texas and in which Gordon agreed to be jointly responsible for the legal services of the Texas law firm; thus, Gordon should have anticipated being

10

subject to Texas jurisdiction based on its purposeful contact in entering into that agreement.

Joros first argues that Gordon admitted in the trial court that it entered into a written contract with Bailey, the Texas law firm, part of which was to be performed in Texas, albeit by Bailey. Joros relies upon the language of the Texas long-arm statute providing that a nonresident does business in Texas if the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042. Joros reasons that, because there is no dispute that Gordon entered into a contract with Bailey and because the statute provides that a nonresident is doing business if "*either party*" is to perform the contract in whole or in part in Texas, Gordon was engaged in doing business in Texas within the meaning of the statute.

Gordon counters that there is no contract between Gordon and Bailey in evidence. This line of argument by Gordon is puzzling. As Joros points out, Gordon admitted in its brief in the trial court that a "joint-representation agreement" did exist between it and Bailey, and the parties even stipulated to

11

its relevant terms.  Indeed, the arguments of both parties center almost entirely on that agreement.[3]

We agree with Joros that the agreement between Gordon and Bailey satisfies the requirement of the Texas long-arm statute that Gordon was "doing business" in Texas by entering into a contract with Bailey, a Texas resident, to be performed in part by Bailey in Texas.  Tex. Civ. Prac. & Rem. Code Ann. § 17.42 (providing that nonresident is doing business here if "either party" is to perform the contract in whole or in part in Texas).   But the Texas long-arm statute reaches only "as far as the federal constitutional requirements of due process will allow."  *Moki Mac*, 227 S.W.3d at 575 (quoting *Guardian Royal*, 815 S.W.2d at 226).  The exercise of jurisdiction by a Texas court over Gordon must still meet the minimum contacts requirement of federal due process.  *Id.* (holding negligence and misrepresentation claims based on sending brochures and release forms to Texas residents that satisfied doing-business requirement of statute were nevertheless insufficient to establish for jurisdiction absent minimum contacts).

---

[3] *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (holding statements in summary judgment response and counter-motion to be judicial admissions); *see also City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (noting admissions of fact in a summary judgment brief could be used to determine whether there is a genuine issue of material fact).

Merely contracting with a Texas resident is insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant. *See, e.g., Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (holding mere existence of a contract between a nonresident and a resident of Texas—including communications related to the execution and performance of that contract—insufficient to support specific jurisdiction); *Weldon-Franke v. Fisher*, 237 S.W.3d 789, 796 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding contracting with and accepting payment from Texas residents insufficient to support minimum contacts); *Trigeant Holdings, Ltd. v. Jones,* 183 S.W.3d 717, 725 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S. Ct. 2174, 2185–86 (1985) (holding that merely contracting with resident of forum state is insufficient to subject nonresident to the forum's jurisdiction).

Joros urges that the terms of the agreement providing for the majority of the legal services to be performed in Texas *by Bailey* the resident of Texas, should be considered in the jurisdictional analysis. To the contrary, what Bailey agreed to do in Texas is not relevant. The first requirement of "purposeful availment" is that only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Michiana,* 168

13

S.W.3d at 785 ("[I]t is only the defendant's contacts with forum that count."); *Turner Shilling v. Gaunce Mgt.,* 247 S.W.3d 447, 456 (Tex. App.—Dallas 2008, no pet.) (holding that performance of contract by plaintiff would "essentially be accomplished in Texas" not relevant to jurisdictional analysis); *Bergenholtz,* 200 S.W.3d at 295 (stating actions by plaintiffs of receiving legal advice, billings, and correspondence in Texas not relevant to jurisdiction over nonresident lawyer); *see also Moncrief Oil Int'l, Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007) (concluding that merely contracting with resident of forum state, even coupled with performance by resident party of forum state, did not establish minimum contacts where defendant did not perform any of its own obligations there, contract did not require performance there, and purpose or hub of contract was centered in Russia). Bailey's performing the legal services in Texas is not a purposeful contact of Gordon. Nor do we see how the provision for Bailey's performance of services in Texas makes it reasonably foreseeable to Gordon that he was subject to being haled into a Texas court, as Joros argues. *See Michiana,* 168 S.W.3d at 785 (noting minimum contacts analysis focuses solely on actions and reasonable expectations of defendant).

Neither do we believe that the second element required for "purposeful availment" is met, that is, that the contact of the defendant must not be simply random, isolated, or fortuitous. *See Moki Mac*, 221 S.W.3d at 575; *Moncrief*

14

*Oil*, 481 F.3d at 313 (holding that "mere fortuity" that one party happened to be Texas resident, coupled with that party's unilateral performance in Texas, not sufficient to confer jurisdiction where agreements were executed in Russia with a Russian corporation concerning a Russian joint venture to develop a Russian oil field); *see also Myers v. Emery,* 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ) (holding receipt of mail and long-distance calls in Texas from defendant as well as representation of other clients in Texas "minimal and fortuitous"). A letter from Bailey to Joros in the record indicates that the case was referred to Bailey by Gordon solely because of Bailey's experience in pharmaceutical litigation.

The parties do not address the third requirement of "purposeful availment," that is, that the defendant must seek some "benefit, advantage[,] or profit by 'availing' itself of the jurisdiction." *Moki Mac,* 221 S.W.3d at 575. It appears that Gordon associated Bailey to handle the filing of the suit in New York because of his experience rather than because of his practice or location in Texas. Joros points to his pleadings alleging that Gordon entered into a joint venture with Bailey by virtue of his agreement with Bailey because he specifically agreed to retain joint responsibility for the legal services to be rendered by Bailey in Texas. Joros argues that this agreement subjects Gordon to joint liability for Bailey's legal services to be rendered on Joros's behalf in

15

Texas and, therefore, constitutes sufficient purposeful availment by Gordon of the privilege of doing business in Texas to subject Gordon to jurisdiction here. This argument conflates personal jurisdiction with liability on the merits of Joros's claim.

Whether Gordon entered into a joint venture with Bailey or otherwise retained joint responsibility for Bailey's conduct in Texas is relevant only to Gordon's liability on the merits. It does not constitute purposeful availment by any activities by Gordon in Texas so as to establish minimum contacts. *See, e.g., PHC-Minden, L.P. v. Kimberly-Clark Corp.* 235 S.W.3d 163, 174 (Tex. 2007) (noting personal jurisdiction involves due process considerations that may not be overridden by statutes or the common law and distinguishing factors relevant to piercing the corporate veil for liability purposes from those relevant to minimum contacts, citing *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (stating liability under the Securities Act "cannot on its own support personal jurisdiction" as such an approach "impermissibly conflates statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair")); *Langston, Sweet & Freese, P.A. v. Ernster*, 255 S.W.3d 402, 411 (Tex. App.—Beaumont 2008, pet. denied) ("A party's liability alone does not establish jurisdiction of the forum."); *see also AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

16

591 (9th Cir. 1996) (stating "liability is not to be conflated with amenability to suit in a particular forum" because personal jurisdiction has constitutional dimensions).

Joros argues that Gordon should have foreseen that, by entering into the agreement for joint representation with Bailey, he might be held liable for Bailey's performance or failure to perform legal services in Texas. But imputing Bailey's conduct to Gordon still results only in liability based on a legal theory rather than actual contacts with Texas by Gordon. Imputed contacts do not suffice to establish minimum contacts by the Gordon firm, itself, with Texas when the agreement for co-representation between Gordon and Bailey did not focus on litigation in Texas. *See Langston*, 255 S.W.3d at 411 (holding partnership's contacts with state not imputed to individual nonresident partner to establish personal jurisdiction absent evidence partner participated in litigation in Texas or had other individual contacts); *see also Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.,* 130 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (op. on reh'g) (holding acts of one joint venturer in business that did not focus on Texas "did not create jurisdiction, as opposed to liability, of other—that is, there are no imputed minimum contacts").

Jurisdiction based on a joint venture agreement between lawyers was rejected in *Eakin v. Acosta*, in which Acosta, a Florida lawyer, represented

17

Eakin, a Texas resident, in a lawsuit filed in Florida. 21 S.W.3d 405, 407 (Tex. App.—San Antonio 2000, no pet.), *abrogated in part on other grounds by BMC Software Belgium*, 83 S.W.3d at 194 n.1. An addendum to the contract of representation between Acosta and Eakin provided that a Texas law firm would act as consulting counsel. *Id.* The addendum further provided that the Texas firm was to "work subservient to the decision making control of lead attorney Howard Acosta," with all legal decisions and strategies to be made by Acosta. *Id*. After the Florida lawsuit was settled, a dispute developed over fees, and Eakin sued Acosta in Texas, claiming Acosta had availed himself of Texas jurisdiction by participating in long-distance telephone calls between Florida and Texas, forwarding the agreement of representation to Eakin in Texas, and entering into the joint venture with the Texas law firm. *Id.* The court of appeals upheld dismissal of Acosta for lack of personal jurisdiction based on Acosta's uncontroverted affidavit that all legal work was performed by him in Florida and because, despite the fee agreement, there was no evidence that Acosta exercised any control over the Texas lawyer or made any legal decisions or formed any strategies that affected that lawyer's work. *Id.* at 410.

Joros attempts to distinguish *Eakin* because the uncontroverted affidavit of the Florida lawyer in that case stated that he had performed all of his work in Florida while the agreement here with the Texas firm provides that much of

18

the legal work was to be performed in Texas. But he overlooks Gordon's similar affidavit here, which was likewise uncontroverted, that Gordon performed all of its legal services on behalf of Joros in Florida. His argument also omits the additional undisputed language in the agreement that the legal work to be performed in Texas would be performed *by Bailey*, not by Gordon.

The facts in this case are even more favorable to the nonresident lawyer than those in *Eakin* because, by performing legal services on behalf of Joros in Texas, Bailey was not acting under the control or direction of Gordon under the agreement. While the nonresident lawyer in *Eakin* was to remain lead counsel, the agreement in this case instead specified that *Bailey* was to act as lead counsel, and there is also no evidence that Gordon exercised any actual control or supervision over Bailey's performance. Consequently, there is no basis in the record for imputing Bailey's conduct to Gordon as a purposeful contact with Texas.

Joros cites the stipulation between the parties that Gordon referred other similar cases to Bailey in Texas for filing and argues that this constitutes other

contacts by Gordon with Texas related to the suit.[4] While the other suits may be related because they involved Zyprexa, there is no evidence or stipulation indicating that those other suits have any connection to the "operative facts" of this litigation. *See Moki Mac*, 221 S.W.3d at 585.

Finally, Joros asserts that Gordon agreed to retain responsibility for Joros's case "in accordance with the Texas Rules of Professional Conduct," such that Gordon was bound by Texas ethical rules to maintain oversight of the legal services rendered by Bailey and must have anticipated that he would be subjected to Texas law. However, the reference to the Texas ethical rules is contained in a letter addressed to Joros from Bailey, not Gordon, and refers to the requirement that Joros be advised of the division of fees, which was Bailey's duty as a licensed Texas lawyer, not that of Gordon.

There is no evidence that Gordon made any trips to Texas in connection with Joros's representation, and no evidence of long-distance calls or correspondence by Gordon to Bailey in connection with the agreement or the

---

[4] Joros also contends that he alleged that the "Defendants" misrepresented that he was in the first and second rounds of settlements in the Zyprexa litigation, when he was not included in either round. He argues that his claims are thus tied directly to Bailey's representation of Joros and the contract between Gordon and Bailey. But any misrepresentations were made in Texas by Bailey or in Florida by Gordon and were made to Joros in Florida. Joros does not explain how these additional allegations strengthen his claim that Gordon engaged in purposeful contacts in Texas.

suit to be filed in New York by Bailey on Joros's behalf.  The agreement between Gordon and Bailey for Bailey to file suit on behalf of Joros stands alone as Gordon's sole contact with Texas.  We decline to hold that this single forum contact constitutes a purposeful availment satisfying the minimum contacts requirement to subject Gordon to the jurisdiction of a Texas court.  Therefore, we need not reach the next question of whether that contact constitutes a "substantial connection" with the operative facts of the lawsuit against Gordon so as to satisfy the requirement that the contact must arise out of and relate to the lawsuit in order to satisfy due process.  Even if we did, we would answer "no."  Joros's claim against Gordon does not arise from or relate to the agreement between Gordon and Bailey but from Joros's own attorney-client relationship with Gordon.  Nor do we need to reach the second prong of the due process inquiry, that is, whether the exercise of jurisdiction comports traditional notions of fair play and substantial justice.  We sustain Gordon's sole issue.

## V.    Conclusion

Because we conclude the trial court lacked personal jurisdiction, we sustain Gordon's sole issue and hold that the court erred by denying Gordon's special appearance.  Accordingly, we reverse the order of the trial court and

21

render judgment dismissing Joros's claims against Gordon for want of jurisdiction.

                                    ANNE GARDNER
                                    JUSTICE

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  April 30, 2009