

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00265-CV

AMERICAN REFRIGERATION                                        APPELLANT
COMPANY, INC.

V.

TRANTER, INC.                                                 APPELLEE

----------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 180,092-A

----------

## MEMORANDUM OPINION[1]

----------

This case arises from a broken heat exchanger manufactured by Appellee

Tranter, Inc. (Tranter) and installed as part of the ice rink refrigeration system in

Dartmouth College's Thompson Arena in Hanover, New Hampshire. Appellant

American Refrigeration Company, Inc. (ARC), a Massachusetts corporation with

---

[1]*See* Tex. R. App. P. 47.4.

its headquarters and principal place of business in Andover, Massachusetts, appeals from the trial court's order denying its special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2016) (authorizing an interlocutory appeal from the denial of a special appearance). In one issue, ARC argues that the trial court erred in denying its special appearance because it lacked sufficient minimum contacts with the State of Texas that would enable Texas to assert personal jurisdiction over it. We reverse and render.

## I. Background

In March 2011, Dartmouth and ARC entered into an agreement under which ARC agreed to install an ice rink refrigeration system in Thompson Arena. Dartmouth retained Refrigeration Engineering Company (REC), a company based in Massachusetts, to perform the design work on the project. REC's plans specified that the Tranter heat exchanger was to be used. ARC placed a purchase order for the heat exchanger with North Atlantic Refrigeration, a company located in Massachusetts.

According to ARC, North Atlantic Refrigeration ordered the heat exchanger from Refrigeration Valves and Systems Corporation (RVS), a Texas corporation located in Bryan, Texas; Tranter, however, contends that ARC ordered the heat exchanger from RVS. RVS requested that Tranter manufacture the heat exchanger according to certain specifications. Tranter's principal place of business is in Wichita County, Texas, and Tranter designed and manufactured the heat exchanger there. In June 2011, Tranter shipped the heat exchanger to

2

RVS in Bryan, Texas, and RVS, in turn, shipped the heat exchanger to New Hampshire. ARC installed the refrigeration system, which included the heat exchanger, in Thompson Arena in August 2011.

In June 2012, the refrigeration system failed. After an investigation, Dartmouth concluded that the system failed as a result of defects in the heat exchanger and shipped the heat exchanger to Tranter for evaluation. Tranter and ARC concluded that contamination introduced into the heat exchanger during maintenance at Dartmouth had damaged the heat exchanger. Unsatisfied by these conclusions, the Trustees of Dartmouth College sent a demand letter to Tranter, ARC, and RVS in November 2013, claiming damages in excess of $880,000.

In December 2013, Tranter brought a declaratory judgment action in Wichita County, Texas, against ARC, RVS, and the Trustees of Dartmouth College. Tranter prayed for the following declarations:

> 1. That the Agreement signed between [Tranter] and [RVS] set out the intentions, rights, obligations, and remedies of the parties to the contract.
>
> 2. Pursuant to the TERMS & CONDITIONS OF SALE, Tranter shall not be liable to any Defendant for any consequential, indirect, special[,] or punitive damages including but not limited to lost profits or additional damages.
>
> 3. [Tranter] and [ARC] did not enter into a contract.
>
> 4. [Tranter] and . . . [the] Trustees of Dartmouth College did not enter into a contract.

3

5. At the time the Heat Transfer system was shipped from Tranter to [RVS], it was free from defects in material or workmanship.

6. No warranty existed, either express or implied from Tranter to Dartmouth on the subject exchanger.

7. When the exchanger was shipped from Tranter to RVS in Bryan, it was free from defects.

8. When the exchanger and system were installed, there were no defects and it operated as intended.

9. The exchanger operated for approximately one year without any of the issues occurring as alleged by Dartmouth.

10. The damage to the exchanger was caused by foreign material being introduced to the system when renovations were being done to the arena, approximately one year after the system was installed.

11. [Tranter] is entitled to reasonable and necessary attorney's fees pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

ARC filed a special appearance, alleging that it was not a Texas resident, that it did not have minimum contacts with Texas giving rise to either specific or general jurisdiction, and that the exercise of jurisdiction over ARC would not comport with traditional notions of fair play and substantial justice. ARC attached to its special appearance an affidavit from its president, Michael Sirois. Sirois averred that ARC is incorporated in Massachusetts; that ARC's company headquarters and principal place of business is in Andover, Massachusetts; that ARC has no business operations, personnel, or registered agent in Texas; and that ARC has not performed any projects in Texas since the formation of the company in 1996. He further averred that REC—not ARC—performed the

4

design work on the Thompson Arena project, that REC's design plans and specifications called for the Tranter heat exchanger, that REC selected the Tranter heat exchanger, that ARC contacted North Atlantic Refrigeration in order to obtain the heat exchanger, that ARC placed the purchase order for the heat exchanger with North Atlantic Refrigeration, that ARC did not directly contact RVS or Tranter to obtain the heat exchanger, that ARC did not negotiate any contracts or sign any contracts with any company or person in Texas regarding this project, and that ARC had no contact with Tranter until after problems with the heat exchanger arose in June 2012.

Tranter filed a response to ARC's special appearance, contending that the trial court had both general and specific jurisdiction over ARC and that the trial court's assumption of jurisdiction over ARC did not deprive ARC of due process. Tranter attached to its response (1) an affidavit from RVS's president, Virgil Jordan, (2) an "Agreement & Order Acknowledgement" for the heat exchanger listing RVS as the seller, ARC as the customer, and North Atlantic Refrigeration as the "representative," (3) a list of sixty-three orders that ARC had placed with RVS from 2004 through 2015 and for which ARC paid a total of $890,000, and (4) the demand letter from the Trustees of Dartmouth College. Jordan stated in his affidavit that ARC approached and contacted RVS in Texas to purchase the heat exchanger, that ARC placed the order with RVS for the heat exchanger, and that ARC paid RVS approximately $68,142 for the heat exchanger. He further stated that "[a]ccording to the Agreement & Order Acknowledgment, the package

5

was F.O.B., Texas[,] otherwise known as free on board. As such, ownership of the heat exchanger was transferred from RVS to its customer [ARC] here in Bryan, Texas." Jordan also stated that ARC has been doing business in Texas with RVS regularly since 2004 and that ARC placed sixty-three orders with RVS in Texas from 2004 through 2015 for which ARC paid a total of $890,000. Jordan claimed that in each of the transactions, ownership of the product was transferred to ARC in Texas and that "[e]ach sale was pursuant to a written contract that was entered into in the State of Texas and each contract was performed within the State of Texas."

After a hearing, the trial court signed an order stating that the trial court had jurisdiction over ARC and denied ARC's special appearance. The trial court did not make any findings of fact or conclusions of law. ARC has appealed.

## II. Burden of Pleading and Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.). To determine whether the plaintiff satisfied its pleading burden and to determine the basis for jurisdiction alleged by the plaintiff, a court considers the allegations in the plaintiff's petition as well as those in its response to the defendant's special appearance. *Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.) (citing Tex. R. Civ. P. 120a(3);

6

*Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied)). Upon filing a special appearance, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003). In other words, the defendant must disprove the existence of minimum contacts sufficient to establish personal jurisdiction over it—general, specific, or both—as alleged by the plaintiff. *See id.* Absent allegations of any specific, purposeful act through which the defendant can be said to have sought a benefit by availing itself of the jurisdiction, evidence that a defendant is a nonresident is sufficient to meet its burden. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 163 (Tex. App.—Fort Worth 2008, no pet.).

Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Moki Mac*, 221 S.W.3d at 574; *TravelJungle*, 212 S.W.3d at 845. In determining whether the nonresident defendant sufficiently negated the pleaded bases for personal jurisdiction, the trial court frequently must resolve questions of fact. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). While we review de novo the trial court's legal conclusion that personal jurisdiction exists, any findings of fact supporting the conclusion are reviewed for factual and legal sufficiency. *See id.* When, as here, the trial court does not make findings of fact and conclusions of

7

law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795. Although the trial court held a hearing on ARC's special appearance and considered the special appearance, Tranter's response, the evidence, and the argument of counsel, there is no reporter's record. Therefore, we will presume that the special appearance hearing was nonevidentiary and that the trial court considered only the evidence filed with the clerk. *See Michiana*, 168 S.W.3d at 782; *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 330 (Tex. App.—Fort Worth 2009, no pet.).

### III. Personal Jurisdiction

### A. Applicable Law

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of due process under the Fourteenth Amendment and the Texas long-arm statute are satisfied. U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2015); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1871–72 (1984); *Moki Mac*, 221 S.W.3d at 574.

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045; *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845. That statute permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845. The statute

8

lists some activities that constitute "doing business" in Texas, including contracting by mail or otherwise with a Texas resident when either party is to perform the contract in whole or in part in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1); *Moki Mac*, 221 S.W.3d at 574. The list of activities set forth in section 17.042 is not exclusive, however. *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845.

Because the long-arm statute reaches "as far as the federal constitutional requirements for due process will allow," a Texas court may exercise jurisdiction over a nonresident if doing so "comports with federal due process limitations." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010)). Therefore, in determining whether such requirements have been met, we rely on precedent from the United States Supreme Court and other federal courts, as well as our own state's decisions. *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845–46. Due process is satisfied when (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *TV Azteca*, 490 S.W.3d at 36; *TravelJungle*, 212 S.W.3d at 846.

### 1. Minimum Contacts

"Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant 'purposefully avails itself of the privilege of conducting

9

activities within the forum State, thus invoking the benefits and protections of its laws.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)); *Michiana*, 168 S.W.3d at 784. A nonresident defendant who has "purposefully availed" himself of the privileges of conducting business in a foreign jurisdiction has sufficient minimum contacts with the forum to confer personal jurisdiction on a court in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S. Ct. 2174, 2183–84 (1985); *Moki Mac*, 221 S.W.3d at 575. The "touchstone" of jurisdictional due process is "purposeful availment." *Michiana*, 168 S.W.3d at 784. It is essential in each case that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* (citing *Hanson*, 357 U.S. at 253, 78 S. Ct. at 1240).

There are at least three aspects to the "purposeful availment" inquiry: first, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; second, the contacts with the forum must be purposeful rather than random, isolated, or fortuitous; and third, the "defendant must seek some benefit, advantage[,] or profit by 'availing' itself of the jurisdiction." *Moki Mac*, 221 S.W.3d at 575 (quoting *Michiana*, 168 S.W.3d at 785). The defendant's actions must justify a conclusion that it could reasonably anticipate being called into the courts of the forum state. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). "[T]he minimum-contacts analysis is focused on the quality and nature of the defendant's

contacts, rather than their number." *Id.* at 339 (citing *Am. Type Culture Collection*, 83 S.W.3d at 806).

## 2. Specific and General Jurisdiction

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia*, 466 U.S. at 413–14, 104 S. Ct. at 1872; *TV Azteca*, 490 S.W.3d at 37; *TravelJungle*, 212 S.W.3d at 846. Specific jurisdiction is present if the nonresident defendant's alleged liability arises from or is related to an activity conducted within the forum. *Moki Mac*, 221 S.W.3d at 576; *TravelJungle*, 212 S.W.3d at 846–47. In other words, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. When a plaintiff asserts that a trial court has specific jurisdiction over a nonresident defendant, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.* at 575–76; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991); *TravelJungle*, 212 S.W.3d at 847.

A trial court has general jurisdiction over a nonresident defendant when that defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Moki Mac*, 221 S.W.3d at 575; *TravelJungle*, 212 S.W.3d at 846. General

11

jurisdiction requires a more demanding minimum-contacts analysis than specific jurisdiction. *See Am. Type Culture Collection*, 83 S.W.3d at 807 (citing *Guardian Royal Exch.*, 815 S.W.2d at 228).

## B. Specific Jurisdiction Analysis

ARC contends that the evidence proves that it is not subject to specific jurisdiction. Tranter alleged in its response to ARC's special appearance and argues on appeal that ARC approached RVS in Texas and placed the order for the heat exchanger, thereby entering into a contract with RVS for the manufacture, purchase, and delivery of the heat exchanger in Texas. These allegations are supported by Jordan's affidavit. Tranter argues that because the contract between RVS and ARC was performed in Texas, ARC purposefully availed itself of the privilege of doing business in Texas and there is a substantial connection between ARC's Texas contacts (ordering the heat exchanger) and the operative facts of Tranter's suit—(1) whether the heat exchanger was damaged when it was manufactured in Texas and (2) whether Tranter made warranties regarding the heat exchanger pursuant to the order.

Through Sirois's affidavit testimony, ARC established that it is not a Texas resident, has no business operations or personnel in Texas, has no registered agent in Texas, has not performed any projects in Texas since ARC's formation, and did not have any contacts with Tranter prior to the heat exchanger's failure in June 2012. ARC also points out that REC specified that the Tranter heat exchanger was to be used, that ARC did not contact Tranter or RVS to procure

12

the heat exchanger, that ARC contacted North Atlantic Refrigeration to obtain the heat exchanger, and that ARC did not negotiate or sign any contracts regarding the project with any Texas company or resident. These allegations are supported by Sirois's affidavit, but because the trial court did not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. Here, Tranter's evidence of the "Agreement & Order Acknowledgement" listing ARC as the customer and RVS as the seller supports the conclusion that ARC entered into a contract with RVS in Texas for the purchase of the heat exchanger.

The contract between ARC and RVS satisfies the requirement of the Texas long-arm statute that ARC was "doing business" in Texas by entering into a contract with RVS, a Texas resident, to be performed in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1). But the Texas long-arm statute reaches only "as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch.*, 815 S.W.2d at 226). The exercise of jurisdiction by a Texas court over ARC must still meet the minimum contacts requirement of federal due process. *See, e.g.*, *id.* at 575–88 (holding negligence and misrepresentation claims based on sending brochures and release forms to Texas residents that satisfied doing-business requirement of statute were nevertheless insufficient to establish jurisdiction absent minimum contacts).

13

Merely contracting with a Texas resident is insufficient to establish the minimum contacts necessary to support the exercise of specific jurisdiction over the nonresident defendant. *See Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185 (stating that an individual's contract with an out-of-state party cannot by itself establish sufficient minimum contacts in the other party's home forum); *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 908–09 (Tex. App.— Austin 2000, pet. denied) (stating that merely contracting with a Texas corporation does not satisfy the minimum-contacts requirement); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 691–92 (Tex. App.—San Antonio 1998, no pet.) (stating that neither contracting with a Texas corporation nor the partial performance of a contract in Texas is sufficient to establish personal jurisdiction), *disapproved of on other grounds by BMC Software*, 83 S.W.3d at 794 & n.1. There is nothing in the record to suggest that ARC sought some benefit, advantage, or profit by availing itself of Texas's jurisdiction. ARC purchased the heat exchanger from RVS, a Texas resident that shipped the heat exchanger F.O.B. Texas to New Hampshire. RVS's act of shipping the goods F.O.B. Texas does not, by itself, give a Texas court jurisdiction over ARC. *See Sun–X Int'l Co. v. Witt*, 413 S.W.2d 761, 768 (Tex. Civ. App.—Texarkana 1967, writ ref'd n.r.e.) (finding no personal jurisdiction where seller shipped goods F.O.B. Houston). Merely purchasing goods from, and sending payments to, Texas does not constitute sufficient minimum contacts for the exercise of specific jurisdiction. *See, e.g., U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex.

14

1977) (concluding that defendant who prepared and mailed checks to forum state did not have sufficient minimum contacts with the forum), *cert. denied*, 434 U.S. 1063 (1978); *Magnolia Gas Co.*, 994 S.W.2d at 691 ("Furthermore, payments sent to the forum state are not determinative."); *see also Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) ("Spademan's mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws.").

We hold that there is insufficient evidence of the minimum contacts necessary to conclude that ARC purposefully availed itself of the privilege of conducting activities within Texas. Thus, ARC's contacts with Texas do not support specific jurisdiction over ARC in Texas.

## C.  General Jurisdiction Analysis

ARC also contends that the evidence proves that it is not subject to general jurisdiction. Tranter alleged that ARC regularly does business in Texas because it "systematically developed an ongoing business relationship with RVS, a Texas company whose principal place of business is in Bryan, Texas, by regularly and continuously entering into contracts with RVS for the purpose of purchasing goods and services in Texas." Tranter points to the sixty-three orders that ARC had placed with RVS from 2004 through 2015 and for which ARC paid RVS more than $890,000 as evidence of ARC's ongoing business relationship with RVS.

ARC points out that each of these orders lists North Atlantic Refrigeration or other companies as "company representatives" of ARC. But even if we assume that ARC made each of these purchases itself, "purchases from Texas vendors will not alone support the exercise of general jurisdiction." *Am. Type Culture Collection*, 83 S.W.3d at 808. In *Helicopteros*, the Supreme Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. at 418, 104 S. Ct. at 1874. Thus, ARC's purchases from RVS do not support general jurisdiction over ARC in Texas. *See id.*; *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 171 (Tex. 2007); *Am. Type Culture Collection*, 83 S.W.3d at 808.

Accordingly, we sustain ARC's sole issue.[2]

## IV. Conclusion

Having sustained ARC's sole issue, we reverse the trial court's order denying ARC's special appearance and render judgment dismissing Tranter's claims against ARC for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c), 43.3.

---

[2]We need not address the question of whether the assertion of personal jurisdiction over ARC would offend traditional notions of fair play and substantial justice. *See* Tex. R. App. P. 47.1; *Furtek & Assocs., L.L.C. v. Maxus Healthcare Partners, LLC*, No. 02-15-00309-CV, 2016 WL 1600850, at *8 (Tex. App.—Fort Worth May 26, 2016, no pet.) (mem. op.).

16

                                                    /s/ Anne Gardner
                                                    ANNE GARDNER
                                                    JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  October 13, 2016