**Sam B. MYERS, Jr., Appellant,**

v.

**Robert J. EMERY, Kelan Emery and Emery, McCandless, Gaitis, Bruehl & Gerstandt, A Professional Corporation, Appellees.**

**No. 05–84–01098–CV.**

Court of Appeals of Texas, Dallas.

Aug. 9, 1985.

Michael V. Powell, Michael L. Dagley, Rain, Harrell, Emery, Young & Doke, Dallas, for appellees.

Mark C. Clements, Randall E. Hand, Dallas, for appellant.

Before AKIN, GUILLOT and HOWELL, JJ.

AKIN, Justice.

Sam B. Myers, Jr., appeals from an order of dismissal granting the special appearance of Robert J. Emery, Kelan Emery, and the law firm of Emery, McCandless, Gaitis, Bruehl and Gerstandt (the individual lawyers and the law firm in which they practice will be referred to as defendants or as "Emery" collectively). The question presented is whether a special appearance under TEX.R.CIV.P. 120a filed after a default judgment had been rendered was a general appearance. We hold that it was not. Likewise we hold that the trial judge did not err in setting aside the default judgment while he had plenary jurisdiction so to do. We further hold that the trial court correctly sustained Emery's special appearance because sufficient minimum contacts between the defendants and the State of Texas were lacking. Accordingly, we affirm the judgment of the trial court.

Myers filed suit against Emery on May 24, 1983, alleging that all defendants were non-residents who had engaged in acts and conduct which violated TEX.BUS. & COM. CODE § 17.46, *et seq.* (Vernon 1968 and Vernon Supp.1985). Myers sought service of process pursuant to the Texas Long Arm Statute, TEX.REV.CIV.STAT.ANN. art. 2031b (Vernon 1964 and Vernon Supp. 1985). On July 19, 1983, Myers obtained a default judgment against Emery for treble damages under the Texas Deceptive Trade Practices Act plus attorneys' fees and a permanent injunction prohibiting Emery from collecting legal fees from Myers. On August 2, 1983, fourteen days after entry of the default judgment, each of the defendants filed a sworn special appearance to contest their lack of amenability to service of process. After filing these special appearances, counsel for Emery orally requested a conference with the trial judge concerning the default judgment. This request was granted and a conference was held on August 3. At the conclusion of that conference, the judge set aside the default judgment.

After limited discovery, a hearing on the special appearances was held on August 30, 1984. At the conclusion of the hearing, the trial court sustained each of the special appearances and dismissed the cause for lack of personal jurisdiction over Emery.

Myers filed a motion for reconsideration on August 22 in which he asked the trial judge to reconsider the order setting aside the default judgment. A hearing was held on Myers' motion on September 14, 1983, which was after the special appearance had been sustained and the cause dismissed. At the September 14 hearing, the trial court denied Myers' motion.

Myers argues that the trial court erred in rendering the order of dismissal because each of the defendants had entered a general appearance both by filing a special appearance and by moving the court for a new trial *after entry of the default judgment.* The record, however, contains no motion for new trial. In this respect, Myers contends that because TEX.R. CIV.P. 120a made no change in the rule in *York v. State,* 73 Tex. 651, 11 S.W. 869 (1889), *aff'd, York v. State of Texas,* 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890), concerning appearances to contest jurisdiction after judgment by non-residents before Texas courts, *all* appearances made after judgment has been rendered are general appearances. We cannot agree with Myers.

Rule 120a(1) states:
... a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State. A special appearance may be made as to an entire proceeding or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that a motion to transfer venue and any other plea, pleading, or motion may be con-

tained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects. The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance. *Every appearance, prior to judgment, not in compliance with this rule is a general appearance.* [emphasis added]

Thus, our question is whether Emery's special appearance filed after a default judgment was granted should be considered a general appearance under rule 120a(1) without requesting any affirmative action on the part of the trial judge. We hold that it cannot be so considered. As we read rule 120a, it does not preclude a special appearance being made after judgment nor does the rule preclude the trial judge from setting aside the default judgment on his own motion.

 Nevertheless, Myers, citing Thode, *In Personam Jurisdiction, Article 2031b, the Texas "Long Arm" Jurisdiction Statute, and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 Tex.L.Rev. 279, 317 (1964), argues that all appearances made after judgment is rendered are general appearances because Rule 120a "makes no change in the effect of appearances after judgment." Although Thode makes this statement in his article, the language in his article which follows that statement shows that Thode contemplated that the defendant would file a motion for new trial, which, of course, would be a general appearance. Thode does not address the question before us where a special appearance is filed and then the trial judge exercises his plenary power to vacate the default judgment. *See Mathes v. Kelton*, 569 S.W.2d 876, 878 (Tex.1978). Moreover, the trial court not only has the power but also the duty to vacate an inadvertent entry of a void judgment at any time. *Bridgman v. Moore*, 143 Tex. 250, 183 S.W.2d 705, 707 (1945). Of course, a judgment is void if the court rendering the judgment lacked jurisdiction

of either party or of the subject matter of the litigation. *Martin v. Sheppard*, 145 Tex. 639, 201 S.W.2d 810, 812 (1947).

Neither is our holding precluded by *Liberty Enterprises, Inc. v. Moore Transportation Company, Inc.*, 690 S.W.2d 570 (1985). In that case the supreme court held, in a situation where a default judgment had been rendered and where the defendant had filed a 120a special appearance and a motion for new trial, that the defendant had submitted to the trial court's general jurisdiction. In so holding, the supreme court emphasized that the defendant in its motion for new trial stated that it was "ready to try this case when it is properly set for trial" and that the defendant agreed to the trial court's order setting aside the default judgment and granting a new trial. On the other hand, in our case, no motion for new trial was filed after Emery's special appearance. Instead, the trial court set aside the default judgment on its own motion. Emery in no way invoked the trial court's general jurisdiction. Indeed, once the default had been set aside by the trial judge, it was as if no default judgment had been rendered and the trial judge was justified in sustaining Emery's special appearance and dismissing the suit.

 Next, appellant argues that the trial court erred in setting aside the default judgment because Emery failed to establish any entitlement to a new trial and in granting the motion for new trial because Emery did not comply with Rules 21 and 320 of the Texas Rules of Civil Procedure. We cannot agree. An order setting aside a default judgment and granting a new trial, within the period when the trial court has plenary power over its judgment, is not subject to review either by direct appeal from that order or from a final judgment rendered after further proceedings in the trial court. *Cummins v. Paisan Construction Co.*, 682 S.W.2d 235, 236 (Tex. 1984); *Burroughs v. Leslie*, 620 S.W.2d 643, 644 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

Myers also argues that the trial court erred in entering the order of dismissal for the reason that Emery had sufficient minimum contacts with Texas to satisfy due process requirements for personal jurisdiction. The relevant facts are not disputed.

In 1982, Myers, a Texas resident, was sued in a lawsuit styled *Ricks Exploration Co. v. Myers* in the United States District court for the Western District of Oklahoma, at Oklahoma City. The plaintiff in that suit, Ricks Exploration Co., was an Oklahoma-based oil and gas exploration company. No Texas lands were involved in the *Ricks* suit nor did the *Ricks* suit present any question of Texas law.

Myers contacted Robert Emery, whom he had never met but who had been recommended to him by Jack Roach, a Dallas attorney, to be his Oklahoma lawyer. Myers telephoned Robert Emery to obtain an appointment to meet with him in Oklahoma City. Myers met with Robert Emery and Kelan Emery at their law firm's offices in Oklahoma City in early 1982. At that meeting, Myers, Robert Emery, and Kelan Emery discussed the *Ricks* litigation and the hourly rate charged by the law firm. Either at the meeting in Oklahoma City or during the course of a telephone call from Oklahoma City several days later, Robert Emery agreed to represent Myers in the *Ricks* suit.

Trial of the *Ricks* case was in Oklahoma City. The United States District Court ruled against Myers and awarded judgment against him in the amount of $300,000.00. Emery charged Myers the sum of $300.00 per hour for legal services performed by Emery. At the time of the Oklahoma trial, Myers had paid the sum of $15,000.00 in attorney's fees and was indebted to Emery for legal services rendered in excess of $21,000.00.

During the course of Emery's representation of Myers in the *Ricks* case, Emery sent copies of pleadings, notices of depositions, and other routine matters by mail or Federal Express to Myers in Dallas. There were also long distance telephone calls between Oklahoma City and Dallas.

■ To determine whether a Texas court has in personam jurisdiction over a non-resident defendant, it is necessary first to determine whether the exercise of jurisdiction by a Texas court over a non-resident is consistent with the requirements of due process of law under the United States Constitution. *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251, 252, 253 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). The Texas "long-arm" statute, TEX.REV.CIV. STAT.ANN. art. 2031b (Vernon 1964 and Vernon Supp.1985) provides, in part, that:

Sec. 3. Any foreign corporation ... or non-resident natural person that engages in business in this State ... and does not maintain a place of regular business in this State, irrespective of any Statute or law respecting designating or maintenance of resident agents, or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation ... or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made....

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation ... *or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State.* [emphasis added]

Emery does not engage in business in this State, nor does Emery maintain a regular place of business here. The contract between Emery and Myers was to be performed in Oklahoma. Consequently, we hold that Emery was not doing business in Texas within the ambit of the long-arm statute.

■ Even if Emery was doing business in Texas under article 2031b, assertion of

jurisdiction over Emery would not comport with due process. *See U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978) (article 2031b reaches as far as due process permits). The starting point for analyzing issues concerning long-arm statutes and due process is *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), which held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

The due process test in *International Shoe* was further clarified in *Hanson v. Denckla,* 357 U.S. 235, 253–254, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298 (1958), as follows:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

In *U-Anchor,* the Texas Supreme Court applied the principles in *International Shoe* and *Hanson v. Denckla* in holding that an Oklahoma resident could not be required to defend in Texas because his only contacts with Texas consisted of executing a contract in Oklahoma which stipulated that payments were to be made in Texas and his subsequent remittance of several payments.

The Texas Supreme Court utilized two tests in *U-Anchor* in analyzing whether a court may exercise jurisdiction over a non-resident. One of the tests, set forth in *Product Promotions, Inc. v. Cousteau,*

495 F.2d 483, 494 (5th Cir.1974), requires that some minimum contact exists with the State which results from an affirmative act of the defendant and that it be fair and reasonable to require the defendant to come into the state and defend the action. In *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966) the Texas Supreme Court held that three basic elements must exist to sustain jurisdiction over a non-resident:

1. The non-resident defendant must purposefully do some act or consummate some transaction in the forum state.
2. The cause of action must arise from or be connected with such act or transaction.
3. The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties and the basic equities of the situation.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), the United States Supreme Court reiterated that the essential foundation of *in personam* jurisdiction when the controversy is related to or "arises out of" the defendant's contacts is the relationship among the defendant, the forum, and the litigation. Relying on *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), which held that "continuous and systematic" business presence existed where the chief officer of the nonresident corporation lived and maintained an office in the forum state, company files were in the forum state, directors meetings were held in the forum state, the chief officer supervised corporate policies from the forum state, and the company's financial affairs were conducted through forum-state banks, the Supreme Court held that when the cause of action does not arise out of, or relate to, the non-resident defendant's activities in the state, the non-resident de-

fendant may be subjected to the *in person-am* jurisdiction of the State if there are sufficient contacts between the State and the defendant. The question presented in *Helicopteros* was whether Helicopteros' contacts with the State of Texas constituted the kind of continuous and systematic general business contacts that existed in *Perkins.*

Myers' reliance on *Siskind v. Villa Foundation for Education, Inc.,* 642 S.W.2d 434 (Tex.1982), to support his contention that Emery actively solicited business in Texas through a *Martindale-Hubbell* advertisement is misplaced. The defendants in *Siskind* were an Arizona school and its employees. The school advertised in national publications which were circulated in Texas and in certain Texas telephone directories. That court held that such advertising in conjunction with mailing information packets, applications for admission, invitations to re-enroll, and enrollment contracts to Texas residents made it apparent that the school was affirmatively seeking business in Texas. Additionally, these advertisements formed the basis of Siskind's claim against the school.

■ To the contrary, Emery neither advertised in Texas telephone directories nor in local publications. Furthermore, none of Myers' claims against Emery arose from Emery's listing in *Martindale-Hubbell* because Myers found these Oklahoma lawyers through referral by a Dallas attorney rather than in *Martindale-Hubbell.* Accordingly, we hold that the mere fact that Emery "advertised" in *Martindale-Hubbell* is insufficient to satisfy the "minimum contacts" required for Texas courts to adjudicate the claims against it. *See C.W. Brown Machine Shop, Inc. v. Stanley Machinery Corp.,* 670 S.W.2d 791, 793 (Tex. App.—Fort Worth 1984, no writ).

Myers also argues that sufficient contacts existed because Myers' checks for payment to Emery for services rendered were drawn on a Dallas bank, remitted to Emery from Dallas through the United States mail, and accepted by Emery. In this respect, Myers received mail from Em-

ery concerning the Oklahoma lawsuit; Emery placed long distance telephone calls to Myers; two members of the law firm are licensed to practice in Texas, one of whom graduated from law school in Texas; Robert Emery owns mineral interests in Texas; Robert Emery has visited Dallas on business and pleasure trips; and Emery has provided legal services to Texas corporations and individuals. We hold that these contacts with the State of Texas were minimal and fortuitous and were not a result of Emery's purposefully conducted activities within the State. *U-Anchor,* 553 S.W.2d at 763. Accordingly, the judgment is affirmed.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. It appears to me that the majority opinion is countenancing a subterfuge to avoid the holding in *Liberty Enterprises, Inc. v. Moore Transportation Co., Inc.,* 690 S.W.2d 570 (1985).

The majority opinion states:

"After filing these special appearances, counsel for Emery orally requested a conference with the trial judge *concerning the default judgment.* This request was granted and a conference was held on August 3rd. At the conclusion of that conference, *the judge set aside the default judgment."* [Emphasis added.]

The reason that counsel for appellee Nonresidents "requested a conference," rather than file a pleading "concerning the default judgment" is obvious. Counsel anticipated that if a written pleading were filed, the special appearance would be waived. He was right. He correctly anticipated the Supreme Court's *Liberty* decision. However, it is plain that Nonresidents did apply to the trial court for relief from the default judgment. The majority holds that inasmuch as this application for relief was oral rather than by formal written pleading, the trial court acted on his own motion. While a trial court undeniably has the power to do so, it is nonsensical to hold that whenev-

er the application for relief is made orally, the trial court is acting on its own motion.

Nonresidents admit that the purpose of the "conference" was to obtain a judicial order relieving them from the default judgment. A pleading on behalf of Nonresidents, signed by Nonresidents' attorney of record, and filed on September 9, 1983, states:

On or about July 27, 1983, the undersigned attorneys were retained to represent defendants, and on August 2, 1983, such attorneys contacted the court's office and inquired as to when the court might be available for a conference with counsel for all parties *respecting the default judgment.* Defendant's [sic] counsel was informed that the Court would be available at 12:45 p.m. on August 2, or 8:45 a.m. on August 3 for such a conference.... Counsel for defendants duly appeared before the Court on August 3 at 8:45 a.m. Counsel for plaintiff did not. At that time, counsel for defendants informed the Court that defendants had retained counsel and appeared in this action and *requested that the Court enter an order setting aside the default judgment.* The Court entered such an order on August 3. [Emphasis added.]

An affidavit attached to Nonresidents' pleading, sworn to by counsel for Nonresidents, states:

Immediately after being informed of the Court's availability [on August 3] I telephoned ... the attorney of record for plaintiff, informed him of defendants' desire for a conference with the Court, *at which conference defendants' intended to request that the default judgment be set aside,* ... and asked whether he could meet with the Court at either of the aforementioned times. [Emphasis added.]

In their brief to this court, Nonresidents advise us that following the filing of their special appearances, "Texas counsel for the defendants telephoned the 116th District Court and counsel for plaintiff to schedule a conference with the Court and opposing counsel *regarding the Default Judgment*" (emphasis added). It is further stated:

There is no dispute ... that counsel for defendant [sic] did appear for the conference with the trial judge on the morning of August 3rd *with the intention to begin, at least, an effort to have the Default Judgment set aside* so that defendants' objections to the jurisdiction could be heard ... counsel for resident plaintiff had notice of the conference and had agreed to the time. [Emphasis added.]

The position taken by Nonresidents in their original brief is: "The conference was not a hearing, it was a conference." They do not attempt to expand upon this sublime difference. No authority is cited for the existence of any such distinction.

In their supplemental brief, Nonresidents state: "There is no dispute that counsel for defendants, after notice to plaintiff's counsel, met informally with the trial judge on August 3, 1983, and asked the judge to set the default aside, which he did...." In order to justify their position, Nonresidents argue:

There can certainly be no presumption that something was done or said during the meeting between defendants' counsel and the trial judge that constituted a general appearance.... To hold that an informal oral request for a trial judge to exercise his plenary power to set aside a default judgment within thirty days after its entry constitutes a general appearance would be tantamount to holding that *any effort* by a nonresident to have a default set aside so he may present his objections to the jurisdiction constitutes a general appearance. [Emphasis added.]

As this writer understands the *Liberty* decision, "any effort" taken by a nonresident to invoke the judicial powers of a Texas court to have a default set aside does, in fact, "constitute a general appearance." Counsel for Nonresidents are to be congratulated upon their resourcefulness, but their attempt to distinguish between a hearing and a conference is barren, a dis-

tinction without substance. Their conscious choice to approach the court orally and informally rather than through written pleadings is likewise insubstantial. Such methods of practice are to be discouraged rather than rewarded. The plain and undeniable fact is that Nonresidents appeared before the court and sought to invoke the judicial powers of the court and secure a ruling in their favor. The holding by the majority that the trial court acted on its own motion is not supported by the record. Thus, the majority's attempt to distinguish *Liberty* evaporates. *Liberty* controls.

For several generations, Texas refused to allow any type of special appearance by Nonresidents for the limited purpose of contesting the jurisdiction. Thode, *In Personam Jurisdiction; Article 2031B, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere*, 42 TEX. L.REV. 279, 292–297 (1964). Texas' refusal to allow special appearances has withstood due process challenge. *York v. Texas*, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890). At some point, inventive attorneys representing Nonresidents resorted to the device of an amicus curiae appearance wherein someone, usually an attorney, was persuaded to come before the trial court professing himself to be a "friend" of the court and "suggest" to the court that it had no jurisdiction. This device, transparent as it was, received widespread judicial recognition. It was even stated that "[n]o importance is usually attached to the fact that the person desiring to appear as a friend of the court is the regularly employed counsel of the defendant." Hearon, *Nonresident Defendants and the Special Appearance in Texas*, 32 TEX.L.REV. 78, 92 (1953) (footnote omitted).

Although it remained in vogue for a number of years, the Supreme Court finally swept away the amicus curiae fiction. Held: If the nonresident defendant arranges for the appearance of the amicus curiae, then the appearance of the amicus curiae constitutes a general appearance by the nonresident. *Burger v. Burger*, 156 Tex. 584, 298 S.W.2d 119 (1957).

Why did such a transparent device survive for so many years? The only discernible reason appears to be that there was widespread dissatisfaction with the refusal of the Texas courts to recognize any type of special appearance. Apparently, our majority is dissatisfied with *Liberty's* holding that any action taken to obtain relief from a default judgment constitutes a waiver of the right to file a special appearance. However, the Supreme Court has also held that special appearances may not be made in disguise. *Burger*, 298 S.W.2d at 121. In the case before us, Nonresidents were attempting to present to the trial court an oral motion for new trial in order to circumvent the provision of Rule 120a(1), TEX.R.CIV.P., that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance." This should not be allowed.

It has been suggested that too much is being read into *Liberty*, that the Supreme Court did not intend to go so far as to hold that *any effort* to obtain relief from a default constitutes a general appearance. It is pointed out that *Liberty* emphasized the statement in the non-resident's motion for new trial that " 'Liberty is ready to try this case when it is properly set for trial,' " and also emphasized that Liberty "signed an agreed order" granting a new trial. 690 S.W.2d at 571. In other words, it is suggested to us that the particular actions of that nonresident caused its downfall and that its special appearance would have been preserved except for its particular actions.

Liberty cannot be read so restrictively. It is obvious that the statement contained in Liberty's motion was made subject to its special appearance then on file. *Cf. Geary, Hamilton, Brice & Lewis v. Coastal Transport Co.*, 399 S.W.2d 878, 879–80 (Tex.Civ.App.—Dallas 1966, no writ) (mere filing of additional pleas does not waive plea of privilege).

Although Liberty signed an agreed order and our Nonresidents did not, no distinction can be predicated thereon. A party in-

vokes the jurisdiction of a court when he affirmatively applies for judicial relief. By signing the agreed order, Liberty, by implication, requested that the trial court sign also and make the document into its official act. Although appellee Nonresidents applied for judicial relief orally, they nevertheless applied. Moreover, they agreed to the order entered simply because it was the order requested. Everything boils down to the attempted distinction between an oral and a written application for judicial relief, a distinction without substance.

Finally, the authorities cited by the Supreme Court reflect that it has reasserted the long established Texas rule that *any* appearance is a general appearance, excepting only those appearances that plainly fall within the ambit of Rule 120a. It must be concluded that the *Liberty* court was holding that any application to set aside a default and grant a new trial constitutes a general appearance.

The Supreme Court has refused to extend Rule 120a by construction. We have the obligation not to extend it by subterfuge. If the rule is unduly harsh, it should be amended. If *Liberty* was improvidently decided, the decision should be reconsidered and overruled. Neither of those recourses can be accomplished by this court. We should not attempt to do by indirection and fiction that which cannot be done directly. *Burger*, 298 S.W.2d 119.

Being of the opinion that *Liberty Enterprises* is controlling, I dissent. The special appearance should be striken. This court should rule that Nonresidents have entered a general appearance. The case should be remanded for trial on its merits.