**REVERSE and RENDER; and Opinion Filed July 15, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-00868-CV
_____

### DON A. MITCHELL, Appellant
### V.
### FREESE & GOSS, PLLC, RICHARD A. FREESE, TIM K. GOSS, SHELIA M. BOSSIER, DENNIS C. SWEET, AND SWEET & FREESE, PLLC, Appellees

### On Appeal from the 95th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-14-08251

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

In a single issue, appellant Don A. Mitchell appeals the trial court's order denying his special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2015); TEX. R. APP. P. 28.1. Because we conclude the trial court erred by denying Mitchell's special appearance, we reverse the trial court's order denying Mitchell's special appearance and render judgment dismissing the claims of appellees Freese & Goss, PLLC, Richard A. Freese, Tim K. Goss, Sheila M. Bossier, Dennis C. Sweet, and Sweet & Freese, PLLC against Mitchell for lack of personal jurisdiction.

---

[1] The Honorable Michael J. O'Neill, Justice, Assigned.

In 2005, Mitchell, a Mississippi attorney, began representing current and former residents of Copiah County, Mississippi, who claimed to have been injured by improper disposal of polychlorinated biphenyls (PCBs) at a Crystal Springs, Mississippi, manufacturing facility (PCB claimants). In February 2006, Mitchell entered into a Joint Venture and Representation Agreement (JVRA) with appellee Sweet & Freese, PLLC (S&F), a Mississippi law firm organized as a limited liability company, for legal representation of PCB claimants, and suit was filed in Mississippi (the PCB litigation) asserting claims on behalf of 348 PCB claimants (the Filed Clients).[3] Sometime after execution of the JVRA, the principals in S&F—appellees Dennis C. Sweet (Sweet), a Mississippi attorney, and Richard A. Freese (Freese), a Florida attorney—ended their business relationship. In April 2007, Freese and Tim K. Goss (Goss), a Texas attorney, formed appellee Freese & Goss, PLLC (F&G), a law firm organized as a Texas professional limited liability company. Freese, Goss, and appellee Sheila M. Bossier (Bossier), a Mississippi attorney, comprise three of the four members of F&G.

F&G assumed the role of lead counsel for PCB claimants in the PCB litigation, representing over 3,300 PCB claimants by the spring of 2008. Representation of approximately 3,000 of those PCB claimants eventually was terminated (Unfiled Clients). In connection with settlement negotiations, Borg-Warner Corporation, a defendant in the PCB litigation, indicated that, in addition to the 348 Filed Clients who were plaintiffs in PCB litigation, it desired to settle the potential PCB claims of the Unfiled Clients. Mitchell and F&G undertook re-signing Unfiled Clients as clients and representing those clients as co-counsel; each re-signed Unfiled Client or PCB claimant signed in this phase of the PCB litigation by Mitchell and F&G executed a legal

---

[2] The facts are taken from the parties' pleadings and evidence relating to the special appearance.

[3] Of the 348 Filed Clients, Mitchell had been retained as counsel by 280.

representation agreement to which Mitchell, F&G, and the client were parties (the Retainer Agreement).

After settlements were reached with defendants in the PCB litigation, a dispute arose between Mitchell and appellees over attorney's fees and allocation and reimbursement of litigation expenses arising out of their joint representation of the PCB claimants. This dispute resulted in litigation in Mississippi filed by Mitchell against appellees. Lawsuits were also filed in Mississippi state and federal courts by some of the PCB clients against appellees alleging wrongful conduct in connection with PCB settlements.

In the Dallas County, Texas, lawsuit underlying this appeal, appellees sued Mitchell,[4] seeking a declaratory judgment and damages for breach of fiduciary duty. Appellees seek a declaratory judgment that Mitchell engaged in wrongful conduct that adversely and materially affected his joint ventures with S&F and F&G, those joint ventures are dissolved due to Mitchell's breaches of the duties owed to the joint ventures, the PCB clients of the joint ventures will be represented by F&G, and Mitchell is no longer owed a share of attorney's fees earned by the joint ventures and is required to return attorney's fees received from the joint ventures.[5] Appellees S&F and F&G allege Mitchell breached his fiduciary duty to the joint ventures with S&F and F&G by: contacting clients of the joint ventures and misrepresenting to them that their PCB cases had been mishandled by the joint venture partners; misrepresenting to PCB clients of the joint ventures that they were due additional sums from settlements with Borg-Warner; obstructing and delaying the distribution of settlement proceeds to PCB clients of the joint ventures by inserting himself in PCB clients' bankruptcy and estate proceedings; making

---

[4] Appellees also sued Charles McRae and his former associate, Greta Lynette Kemp. Mitchell is represented by attorney Charles McRae in Mississippi litigation between Mitchell and appellees. McRae's special appearance was granted by the trial court.

[5] It is undisputed there is no written agreement between Mitchell and F&G. The record contains Mitchell's deposition testimony that Goss became a member of the Joint Venture of Mitchell and S&F "since [F&G] took over the [PCB] litigation."

misrepresentations to third parties, including bankruptcy trustees and judges, which caused confusion and delay in the distribution of certain PCB clients' settlement funds; and misrepresenting to the Mississippi state bar that appellees had engaged in unethical conduct.

Mitchell filed a special appearance contesting personal jurisdiction over him. The trial court denied Mitchell's special appearance, and he filed this interlocutory appeal of that order.

## Denial of Special Appearance

In one issue, Mitchell asserts the trial court erred by denying his special appearance and subjecting him to personal jurisdiction in Texas because he negated all possible grounds for personal jurisdiction.

### Standard of Review

The question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Id*. (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)).

### Applicable Law

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Id*. at 149 (quoting *Moki Mac*, 221 S.W.3d at 574). The Texas long-arm statute provides in part that "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. §

17.042(1) (West 2015). "The broad 'doing business' language in Texas's long-arm statute allows the trial court's jurisdiction to 'reach as far as the federal constitutional requirements of due process will allow.'" *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (quoting *Moki Mac*, 221 S.W.3d at 575). Personal jurisdiction is consistent with due process "when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Id*. (quoting *Moki Mac*, 221 S.W.3d at 575).

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. at 657–58 (quoting *Retamco*, 278 S.W.3d at 338–39). When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction. *Moncrief Oil*, 414 S.W.3d at 151 (quoting *Retamco*, 278 S.W.3d at 338–39). This analysis assesses the quality and nature of the contacts, not the quantity. *Id*. Physical presence in the state is not required but "frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Id*. at 152 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there." *Id*.

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id*. at 150. Appellees' asserted basis for personal jurisdiction over Mitchell is specific jurisdiction

only.[6] When specific jurisdiction is alleged, we focus on the relationship among the defendant, the forum, and the litigation. *Id*. Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's activity within the forum. *Id*. 150, 156. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. at 156 (quoting *Moki Mac*, 221 S.W.3d at 585). "[B]ut-for causation alone is insufficient." *Id*. at 157. "The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction." *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.) (quoting *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.)). We analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *Moncrief Oil*, 414 S.W.3d at 150–51.

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Id*. at 154 (citing *Retamco*, 278 S.W.3d at 338). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id*. at 154–55. This evaluation is undertaken in light of the following factors, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Retamco*, 278 S.W.3d at 341.

---

[6] Although appellees pleaded both general and specific personal jurisdiction over Mitchell, appellees' counsel confirmed at oral submission of this appeal that appellees' asserted basis for personal jurisdiction over Mitchell is specific jurisdiction only.

"Our special appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 658; *see also* TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead allegations sufficient to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly*, 301 S.W.3d at 658. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id*. The defendant can negate jurisdiction on either a factual or legal basis. *Id*. at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

*Application of Law to Facts*

Appellees pleaded that Mitchell is subject to specific personal jurisdiction in Texas because "this dispute arose out of [Mitchell's] contacts with Texas." *See Moncrief Oil*, 414 S.W.3d at 150–51. With regard to Mitchell's purported contacts with Texas, appellees pleaded: Mitchell maintains a business relationship with F&G, a Texas firm, for purposes of litigating PCB claims underlying this lawsuit; Mitchell participated in meetings and telephone calls with F&G; the attorney's fee dispute that underlies this action is "centered on" payments made or claimed to be owed to Mitchell by F&G; "key events in this action occurred in Texas"; Mitchell

solicited or conspired to solicit F&G's Texas PCB clients to file lawsuits against appellees; and those acts were specifically directed toward causing injury to appellees in Texas. In support of his special appearance, Mitchell contends: he did not purposefully direct any activities to Texas; appellees' claims against him do not arise from or relate to any activity he conducted within Texas; the alleged acts on which appellees' claims are based occurred in Mississippi; none of his limited contacts with Texas in connection with the underlying PCB litigation were for the purpose of doing business in Texas; and assumption of jurisdiction by Texas over him would offend traditional notions of fair play and substantial justice.

Co-Counsel Relationship with F&G

Appellees assert Mitchell sought to avail himself of the benefits of his co-counsel business relationship with F&G, a Texas law firm, for the purpose of representing PCB claimants in Mississippi and is, therefore, subject to personal jurisdiction in Texas with respect to claims against him that arise from that business relationship. Appellees argue that although the purpose of the co-counsel business relationship was to represent PCB claimants in Mississippi, many of the "key events" related to the administration of the settlements of PCB clients' claims (for example, allocating settlement amounts, expenses, and costs, distribution of settlement funds, and obtaining releases) were performed by F&G in Texas, and Mitchell benefitted from that work.

The record reflects that, although Mitchell and F&G acted as co-counsel in the representation of PCB claimants in the PCB litigation and settlement of PCB claims, no part of this joint representation was performed by Mitchell in Texas. Mitchell's activities with regard to the representation of PCB claimants occurred in Mississippi and outside of Texas, and he never came to Texas in conjunction with his co-counsel business relationship with F&G. While appellees assert Mitchell had contacts with Texas through participation in meetings and

–8–

telephone calls with F&G concerning the PCB litigation, evidence establishes that, to the extent Mitchell had any communications with anyone in F&G's Texas office, those communications took place while Mitchell was outside Texas. Mitchell had only one telephone conversation with Goss, and that conversation was initiated by Goss. Mitchell met Goss once in Chicago during a mediation of the PCB litigation. Mitchell never sent letter or email correspondence to Goss and does not recall receiving any letter or email correspondence from Goss.

Merely contracting with a Texas entity is insufficient to constitute purposeful availment for jurisdictional purposes, especially when the contractual obligations are performed outside the forum state. *See Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 485 (Tex. App.—Dallas 2010, pet. denied). The co-counsel business relationship did not focus on activity in Texas, but rather the representation in litigation or settlement of PCB claims in Mississippi, and it is Mitchell's contacts with the forum that are relevant in this jurisdictional analysis, not the unilateral activity of F&G conducted in F&G's Texas office. *See Moncrief Oil*, 414 S.W.3d at 151; *see also Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 334 (Tex. App.—Fort Worth 2009, no pet.) (concluding there was no basis in the record for imputing Texas co-counsel's legal services in Texas as a purposeful contact with Texas by nonresident co-counsel); *Eakin v. Acosta*, 21 S.W.3d 405, 407, 410–11 (Tex. App.—San Antonio 2000, no pet.), *abrogated in part on other grounds by BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 n.1 (Tex. 2002) (in suit over fees brought in Texas, jurisdiction based on joint venture agreement between lawyers was rejected; Florida lawyer represented a Texas resident in lawsuit filed in Florida and Texas law firm acted as consulting counsel; Florida lawyer performed all the work on behalf of client in Florida).

Appellees also argue the attorney's fee dispute that underlies this action is "centered on" payments made, or claimed to be owed, to Mitchell by F&G. The record contains a check to

Mitchell from F&G drawn from an F&G bank account in Dallas, Texas, with a "memo" notation "PCB Settlement Check." However, a check drawn on F&G's Dallas, Texas, bank account to Mitchell in Mississippi is not an act by Mitchell, and does not create personal jurisdiction over Mitchell. *See Myers v. Emery*, 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ) (among others, fact that checks to Oklahoma law firm were drawn on Dallas, Texas, bank, remitted from Dallas through the United States mail, and accepted by the Oklahoma law firm did not create personal jurisdiction); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (check drawn on Pelican's Texas bank did not qualify as a "purposeful" contact because it was Pelican's action, not Proskauer Rose's); *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person).

For these reasons, Mitchell did not purposefully avail himself of the privilege of conducting business in Texas by virtue of his co-counsel business relationship with F&G. Mitchell's co-counsel relationship with F&G did not give rise to minimum contacts with Texas and Mitchell is not subject to personal jurisdiction in Texas on that basis. *See Gordon & Donner, P.A.*, 287 S.W.3d at 334; *Myers*, 697 S.W.2d at 32.

<u>Texas Resident PCB Clients</u>

In support of their contention that Mitchell is subject to specific personal jurisdiction in Texas, appellees also rely on Mitchell's legal representation of certain PCB claimants in the PCB litigation who, at some point after residing in Copiah County, Mississippi, had become residents of Texas. Appellees contend that Mitchell undertook representation in the PCB litigation of certain PCB claimants who reside in Texas, and the JVRA or Retainer Agreement for legal representation is performable at least in part in Texas because the Texas clients' obligations and

responsibilities pursuant to those contracts are performable in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (nonresident is doing business in Texas if nonresident contracts by mail or otherwise with Texas resident and either party is to perform the contract, in whole or in part, in Texas).

However, "[i]n the case of nonresident-defendant lawyers, the 'mere existence of an attorney-client relationship unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required.'" *Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 484 (quoting *Klenk v. Bustamante*, 993 S.W.2d 677, 682 (Tex. App.—San Antonio 1998, no pet.)). "Merely contracting with a Texas resident is insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Gordon & Doner, P.A.*, 287 S.W.3d at 332. "[N]either the mere existence of an attorney-client relationship between a resident client and an out-of-state attorney nor the routine correspondence and interactions attendant to that relationship are sufficient to confer personal jurisdiction." *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468 n.2 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Bergenholtz v. Cannata*, 200 S.W.3d 287, 295–97 (Tex. App.—Dallas 2006, no pet.); *Myers*, 697 S.W.2d at 32; *Geo-Chevron Ortiz Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *3 (Tex. App.—San Antonio Mar. 7, 2007, pet. denied) (mem. op.) (merely representing clients who live in forum state does not supply sufficient contacts to bring out-of-state attorneys within Texas's jurisdiction); *see also Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (mere existence of contract between nonresident and a Texas resident, including communications related to the execution and performance of that contract, insufficient to support specific jurisdiction).

In his dispute with appellees over attorney's fees and allocation and reimbursement of litigation expenses arising out of representation of the PCB claimants, Mitchell is seeking fees for his representation of PCB claimants pursuant to the JVRA and Retainer Agreements, including PCB clients who reside in Texas. Mitchell was aware prior to the time of his dispute with appellees over attorney's fees and allocation and reimbursement of litigation expenses that one or more of the PCB clients resided outside Mississippi. Mitchell acknowledged that when he and F&G were endeavoring to re-sign Unfiled Clients, he had personal communication with potential clients and that he was "manning the phones" and "calling people" in that undertaking. However, he stated he did not actively undertake representing PCB claimants who resided outside Mississippi and he did not authorize anyone to travel outside of Mississippi to speak with potential PCB claimants. Bossier testified in a deposition that she was aware Mitchell never came to Texas in connection with the PCB litigation and she had no personal knowledge of Mitchell making telephone calls or sending correspondence to anyone in Texas in an effort to sign or re-sign PCB claimants as clients in the PCB litigation. Further, there is no allegation Mitchell undertook performance under the JVRA or Retainer Agreements in Texas or that his performance was due in Texas, and as is discussed above, Mitchell's acts with regard to representation of PCB clients took place in Mississippi and outside of Texas.

For these reasons, Mitchell did not purposefully avail himself of the privilege of conducting business in Texas by virtue of his joint representation of clients in the PCB litigation who became residents of Texas. Mitchell's joint representation of certain clients in the PCB litigation who became residents of Texas did not give rise to minimum contacts with Texas and Mitchell is not subject to personal jurisdiction in Texas on that basis. *See Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 484.

<u>Solicitation of Clients to File Lawsuits Against Appellees</u>

S&F and F&G contend Mitchell solicited or conspired with his co-defendant attorneys, Charles McRae and Greta Lynette Kemp, and another attorney, Doug Wade, to solicit F&G's PCB clients, some of whom reside in Texas, to file lawsuits against appellees and thereby tortiously interfered with F&G's Retainer Agreements with those PCB clients.[7] S&F and F&G allege Mitchell breached his fiduciary duty to them as co-counsel in the representation of PCB clients by misrepresenting to PCB clients that their claims had been mishandled by partners in S&F and F&G. In response to Mitchell's special appearance, S&F and F&G asserted Mitchell induced PCB clients of S&F and F&G to "turn against their lawyers" in order to advance his attorney's fee dispute with appellees, "thereby breaching his fiduciary duty." Appellees argued that Mitchell's alleged breach of fiduciary duty "occurred in Texas" because his actions were "directed towards Texas" and "the recipient of the harm was [F&G], as well as the Texas-based PCB Clients." Appellees acknowledged in their response to Mitchell's special appearance that "a tort alone is insufficient to confer jurisdiction," but argue that "Mitchell's tortious conduct, combined with his other contacts, does confer jurisdiction." *See Lisitsa v. Flit*, 419 S.W.3d 672, 680 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (allegation of wrongdoing by fiduciary against Texas resident is not, by itself, enough to support specific jurisdiction).

---

[7] Appellees pleaded that "upon information and belief," Mitchell "facilitated phone solicitations, meetings, and other contacts between the joint venture's individual clients and McRae," and McRae, Mitchell, and Kemp "then made misrepresentations to induce the clients to "turn against their lawyers." Appellees rely on a Declaration of Bossier in which she states, "While he denies it, I have reason to believe that [McRae] was working with [Wade] to solicit the PCB clients," and "[b]ased on a review of the pleadings [McRae] has filed and review of our internal client records, [McRae] is representing numerous Texas residents in the various cases he has filed against [appellees]." In response to Mitchell's special appearance, appellees asserted that McRae and Mitchell utilized Wade as a "fronting attorney to sign up the PCB clients so as to hide their involvement," and Wade engaged a large number of PCB clients using a PCB client list provided by Mitchell, McRae, or both.

In a deposition, Wade testified that Mitchell was not the source of Wade's clients in lawsuits brought by PCB claimants against appellees, Mitchell did not assist Wade or conspire with Wade to obtain representation of those clients, and Wade never sought information from Mitchell about PCB clients to assist Wade in representing those PCB clients in litigation against appellees. Robert Cox, an employee of McRae's law firm, testified in a deposition that Mitchell did not provide a list of his PCB clients to be utilized in identifying potential clients for legal representation in litigation against appellees. McRae testified in a deposition that he has no personal knowledge regarding Wade's solicitation of PCB clients in litigation against appellees, he has no personal knowledge of how Wade obtained the names of PCB claimants in order for Wade to identify potential clients in litigation against appellees, and McRae had no list of PCB clients represented by Mitchell and appellees prior to filing lawsuits against appellees. With regard to cases filed against appellees, which include plaintiffs who are Texas residents, McRae testified he did not use, rely on, or obtain assistance from Mitchell.

Mitchell responded that, even if he conspired with others to solicit PCB claimants to sue appellees or interfered with F&G's Retainer Agreements with PCB clients, which he denied, he neither conspired nor interfered in Texas.[8]  Further, Mitchell argues appellees' complaints that his actions were directed toward causing injury to appellees in Texas will not support personal jurisdiction over him.  *See Geo-Chevron Ortiz Ranch #2*, 2007 WL 671340, at *3 (nonresident defendant's burden is not to negate the alleged tort, but to negate the sufficiency of the contacts with the form).

Here, the allegedly tortious conduct by Mitchell underlying S&F and F&G's breach of fiduciary duty claim and appellees' declaratory judgment action does not qualify as purposeful contacts with Texas required to confer specific jurisdiction.  Mitchell's allegedly tortious conduct of meeting with PCB clients and conspiring with Mississippi attorneys to solicit PCB clients to sue appellees and to interfere with F&G's Retainer Agreements with PCB clients took place in Mississippi.  That the effects of the allegedly tortious conduct may have been felt by the Texas office of F&G is not sufficient for personal jurisdiction.  *See Moncrief Oil Int'l*, 414 S.W.3d at 157 (defendants' alleged tortious conduct in California against Texas resident was insufficient to confer specific jurisdiction over defendants as to plaintiff's tortious interference claims).  The supreme court has rejected the notion of focusing on where a defendant directed a tort or where the effects of tortious conduct will be felt in determining specific jurisdiction.  *See Michiana*, 168 S.W.3d at 790–92; *Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 478 (specific jurisdiction is not established merely by allegations or evidence that nonresident committed a tort in the forum state or "directed a tort" at the forum state).  Rather, "it is 'the defendant's conduct and connection with the forum' that are critical."  *Michiana*, 168 S.W.3d at 789 (quoting *Burger*

[8] While disagreeing with use of the term "solicitation," Mitchell acknowledged that in 2012, he met in Mississippi with three or four PCB clients who were residents of Mississippi and informed them that he was in a dispute with F&G and unable to verify certain allocated litigation expenses.

–14–

*King Corp.*, 471 U.S. at 474); *Markette*, 240 S.W.3d at 469 (courts analyze degree of "connectedness" between forum contacts and litigation to determine whether operative facts of litigation focus on those contacts).

For these reasons, Mitchell's alleged tortious conduct of meeting with PCB clients in Mississippi and conspiring with Mississippi attorneys to solicit PCB clients to sue appellees and interfere with F&G's Retainer Agreements with PCB clients did not constitute purposeful contacts with Texas. This alleged tortious conduct did not give rise to minimum contacts with Texas and Mitchell is not subject to personal jurisdiction in Texas on that basis. *See Ahrens & DeAngeli, P.L.L.C.*, 318 S.W.3d at 484.

*Conclusion*

For specific jurisdiction to exist, Mitchell must have made minimum contacts with Texas by purposefully availing himself of the privilege of doing business here, and his liability must arise from or relate to those contacts. *See Moki Mac*, 221 S.W.3d at 575–76; *see also Searcy v. Parex Res., Inc.*, Nos. 14-0293 & 14-0295, 2016 WL 3418248, at *5 (Tex. June 17, 2016) (specific jurisdiction is based on whether defendant's activities in forum state themselves give rise to liabilities sued on; broadly stated, specific jurisdiction exists when plaintiff's claims arise out of or are related to defendant's contact with forum). After reviewing the record and for the reasons discussed above, we conclude Mitchell negated appellees' alleged bases of specific jurisdiction.[9] We resolve Mitchell's sole issue in his favor.

---

[9] Having concluded Mitchell did not purposefully avail himself of the privilege of doing business in Texas, we need not reach Mitchell's argument that exercise of personal jurisdiction over him does not comport with traditional notions of fair play and substantial justice. *See Kelly*, 301 S.W.3d at 657.

We reverse the trial court's order denying Mitchell's special appearance, and we render judgment dismissing him from this case for lack of personal jurisdiction.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

150868F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DON A. MITCHELL, Appellant

No. 05-15-00868-CV      V.

FREESE & GOSS, PLLC, RICHARD A.
FREESE, TIM K. GOSS, SHELIA M.
BOSSIER, DENNIS C. SWEET, AND
SWEET & FREESE, PLLC, Appellees

On Appeal from the 95th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-14-08251.
Opinion delivered by Justice Fillmore,
Justices Stoddart and O'Neill participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant Don A. Mitchell's special appearance is **REVERSED** and judgment is **RENDERED** dismissing appellant Don A. Mitchell from this case for lack of personal jurisdiction.

It is **ORDERED** that appellant Don A. Mitchell recover his costs of this appeal from appellees Freese & Goss, PLLC, Richard A. Freese, Tim K. Goss, Shelia M. Bossier, Dennis C. Sweet, and Sweet & Freese, PLLC.

Judgment entered this 15th day of July, 2016.